IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE GLOBAL TEL*LINK                                    CASE NO. 5:14-CV-5275
CORPORATION ICS LITIGATION

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Global Tel*Link Corporation's ("GTL") Motion to Compel Arbitration (Doc. 133) and Memorandum of Law in Support (Doc. 134); Plaintiffs Kaylan Stuart's, Dustin Murilla's, Walter Chruby's, and Rocky Hobbs's Response in Opposition (Doc. 139); and GTL's Reply (Doc. 142).[1] For the reasons given below, GTL's Motion is **DENIED**.

## I. BACKGROUND

In this class action, Plaintiffs allege that GTL charged them unjust and unreasonable rates for inmate phone-calling services at various correctional facilities throughout the United States, in violation of the Federal Communications Act and the common law of unjust enrichment. According to the Complaint, Mr. Hobbs "is a resident of Texas" who "paid unjust and unreasonable telephone charges for interstate calls he received from his loved one, Mason Hobbs during his incarceration at Southwest Arkansas Community Correction Center located in Texarkana, Arkansas, using telecommunication services operated by [GTL] between March 2015 through July 2015." (Doc. 126, ¶ 7). GTL asks this Court to compel Mr. Hobbs to arbitrate his claims against

---

[1] GTL requested oral argument on this Motion. *See* Doc. 133, p. 1. However, the Court believes it is sufficiently well apprised of the law and facts pertaining to this Motion to make oral argument unnecessary. Accordingly, the Court is ruling on this Motion without receiving oral argument.

GTL, pursuant to an arbitration agreement that GTL contends was concluded between GTL and Mr. Hobbs. Mr. Hobbs and the other Plaintiffs oppose GTL's Motion, and insist that Mr. Hobbs never agreed to arbitrate his claims at all.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has repeatedly recognized this to be the enunciation of a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 566 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24 (1983)). However, the general rule is that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Further, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The party seeking to compel arbitration bears the burden of establishing the arbitration agreement's existence, and the facts and evidence

2

must be viewed in the light most favorable to the party disputing the arbitration agreement's existence. *See Neb. Machinery Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741–42 (8th Cir. 2014).

## III. DISCUSSION

GTL insists that this Court should not address the issue of whether the arbitration agreement in question was ever actually formed, but rather should compel arbitration on even that threshold matter because the disputed arbitration agreement purports to reserve disputes regarding formation for the arbitrator. *See* Doc. 142, pp. 7–9. This argument is squarely foreclosed by binding Eighth Circuit precedent. When the parties dispute whether an arbitration agreement was ever concluded in the first place, then the Court cannot rely on the disputed arbitration agreement itself to compel arbitration of the issue of its own formation, since doing so "puts the cart before the horse" by specifically enforcing an alleged agreement whose very existence has not yet even been established. *See Neb. Machinery Co.*, 762 F.3d at 740–41 & n.2.

GTL characterizes the earlier United States Supreme Court cases of *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), as holding otherwise, but GTL's argument depends on a fundamental misreading of those cases. Each of those cases involved challenges to the *validity* of contracts containing arbitration clauses—specifically, that the contracts in question were either unconscionable, *Rent-A-Center*, 561 U.S. at 65, illegal, *Buckeye Check Cashing*, 546 U.S. at 444, or obtained by fraud, *Prima Paint*, 388 U.S. at 402–04. But the Supreme Court has repeatedly recognized that the issue of a contract's *validity* is different from the

3

issue of whether a contract *was ever concluded* in the first place, and it has explicitly and repeatedly cautioned that its holdings in this line of cases should *not* be read as applying to disputes over the latter. *Rent-A-Center*, 561 U.S. at 70 n.2 ("The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded,' and . . . we address only the former."); *Buckeye Check Cashing*, 546 U.S. at 444 n.1 ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue . . . [whether] it is for courts to decide whether the alleged obligor ever signed the contract.").

Here, Plaintiffs contend that GTL and Mr. Hobbs never concluded an arbitration agreement in the first place, because there was never any mutual assent to its terms. (Doc. 139, pp. 8–13). Thusly framed, and in the wake of binding Eighth Circuit precedent and silence from the Supreme Court, this question is "presumptively committed to judicial determination." *Neb. Machinery Co.*, 762 F.3d at 740–41. Accordingly, this Court will reach it.

To answer this question the Court must look to state contract law, *see Casteel v. Clear Channel Broad., Inc.*, 254 F. Supp. 2d 1081, 1087 (W.D. Ark. 2003), and specifically to "the law of the state with the most significant relationship to the issue at hand," *Crisler v. Unum Ins. Co. of Am.*, 366 Ark. 130, 133 (2006).[2]  Since Mr. Hobbs is a resident of Texas who opened and funded the account in question from Texas, the parties and the

---

[2] The Court is applying Arkansas choice-of-law rules because it sits in the state of Arkansas. *See Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320–21 (8th Cir. 1991).

4

Court agree that Texas law governs this issue. *See* Doc. 134, p. 9; Doc. 139, p. 7. And under Texas law, as with Arkansas law, "[m]utual assent is a fundamental essential of every contract." *Nat'l Cas. Co. v. Lane Express, Inc.*, 998 S.W.2d 256, 262 (Tex. Ct. App. 1999); *see also Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, at *5 (listing "mutual agreement" as an "essential element[] of a contract" under Arkansas law).

GTL contends that Mr. Hobbs funded his prepaid account with GTL over the telephone, and that every time he did so prior to March 30, 2015, he heard the following automated message before funding his account:

> Please note that your account, and any transactions you complete, with GTL, PCS, DSI-ITI, or VAC are governed by the terms of use and the privacy statement posted at www.connectnetwork.com. The terms of use and the privacy statement were most recently revised on July 3, 2013.

(Doc. 134-1, ¶ 2). GTL further contends that from March 30, 2015 onward, Mr. Hobbs heard the following automated message before funding his account:

> Please note that your account, and any transactions you complete with GTL or any of its affiliates, are governed by the terms of use and the privacy statement posted at www.connectnetwork.com. The terms of use and the privacy statement were most recently revised on March 30, 2015.

(Doc. 134-1, ¶ 4). It appears that at all times relevant to this Motion, the terms of use contained an arbitration clause, and provided users the right to opt out within thirty days and receive a refund. *See id.* at ¶¶ 3–4.

The critical question here is whether a reasonable person in Mr. Hobbs's position would have understood this automated message to be referring to the terms of a *contract* by its reference to "the terms of use and the privacy statement posted at www.connectnetwork.com," such that a reasonable person in his position would have understood himself to be *assenting* to those terms by funding an account. If so, then it

5

would not necessarily be any bar to enforcement that Mr. Hobbs never placed his signature on the contract or clicked or punched a button to signify acceptance of its terms, *see Perez v. Lemarroy*, 592 F. Supp. 2d 924, 930 (S.D. Tex. 2008), or never had the opportunity to review the terms of use prior to using GTL's services instead of afterwards (with the option of opting out and receiving a refund), *see Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 916, 918–19 (N.D. Tex. 2000). But if a reasonable layperson in Mr. Hobbs's position would not have understood the automated message to be referring to the terms of a contract, then the essential element of mutual assent has not been satisfied and Mr. Hobbs never agreed to arbitrate his claims. After all, as the Restatement (Second) of Contracts explains, "[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and *knows or has reason to know that the other party may infer from his conduct that he assents*." Restatement (Second) of Contracts § 19(2) (emphasis added). And "[a] person has reason to know a fact, present or future, if he has information from which a person of ordinary intelligence would infer that the fact in question does or will exist." *Id.* at cmt. b.

The Court finds that the automated messages described above did not provide a person of ordinary intelligence reason to know that GTL would infer from his conduct that he was assenting to the terms of use. They contained no words indicating the presence of any sort of bargaining, such as "contract," "consent," "agree," "assent," "offer," "accept," or the like. Indeed, they contained no indication that "the terms of use and the privacy statement posted at www.connectnetwork.com" were anything other than statements or summations of generally-applicable legal rights and duties that were imposed on providers and users of inmate calling services alike by third-party state actors. It would

6

have been very easy for GTL simply to have told Mr. Hobbs in the first place that it was proposing a bargain to which his assent was requested. But instead, it decided merely to invite him to visit a website where he might accidentally stumble across this fact. GTL's Motion fails to establish that Mr. Hobbs ever made that discovery; accordingly, there is no basis in the record for concluding that Mr. Hobbs ever agreed to arbitrate his claims in this case. *Cf. Sw. Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761, at \*4–\*5 (N.D. Tex. Sep. 12, 2007) (when a website does not require its users to expressly manifest assent to its terms and conditions, there must be a "showing of actual or constructive knowledge of a site's terms and conditions prior to using the site" in order for users to be bound by those terms and conditions, even if those terms and conditions were displayed somewhere on the site).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Global Tel\*Link Corporation's ("GTL") Motion to Compel Arbitration (Doc. 133) is **DENIED**.

**IT IS SO ORDERED** on this _2nd_ day of March, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE